| | | |
|---|---|---|
| MEREDITH BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| TOWN OF BEAUFORT, CHRISTI WOOD, | ) | |
| in her official capacity, and MARK EAKES, | ) | |
| in his official and individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court upon defendants' partial motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (DE 29, 56). The motions have been briefed fully, and the issues raised are ripe for ruling. For the following reasons, the motions are granted in part and denied in part as set forth herein.

## STATEMENT OF THE CASE

Plaintiff initiated this action March 18, 2019, by filing complaint in Carteret County Superior Court, asserting the following claims: 1) discrimination and retaliation on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. against defendant Town of Beaufort ("Town"), 2) wrongful discharge in violation of North Carolina public policy against defendant Town, 3) intentional infliction of emotional distress ("IIED") against defendant Mark Eakes ("Eakes") in his individual capacity, 4) violation of her Fourteenth Amendment rights under 42 U.S.C. § 1983 against defendant Eakes in his individual

capacity, 5) violation of N.C. Gen. Stat. § 160A-168 against defendant Town, and 6) violation of her rights under the North Carolina Constitution against defendant Eakes and defendant Christi Wood ("Wood") in their official capacities. Plaintiff seeks compensatory and punitive damages, costs, attorneys' fees, interest, as well as declaratory and injunctive relief.

Defendants removed the action to this court April 18, 2019. Thereafter, plaintiff filed the operative amended complaint. Defendant Eakes filed the instant partial motion to dismiss July 1, 2019, asserting plaintiff's IIED claim should be dismissed for failure to state a claim. On September 3, 2019, defendants Eakes, Wood, and Town filed the instant motion to dismiss asserting 1) plaintiff's official capacity claims against defendants Eakes and Wood are duplicative of plaintiff's claims against defendant Town, 2) plaintiff's claims under the North Carolina Constitution should be dismissed because plaintiff has adequate state remedies, and 3) plaintiff cannot recover punitive damages from defendant Town or from defendants Eakes and Wood in their official capacities. [1] Plaintiff responded in opposition and defendants replied.

## STATEMENT OF FACTS

The facts alleged in amended complaint may be summarized as follows. Defendant Town employs defendant Eakes as Director of Public Works, defendant Wood as Director of Finance, and Donovan Willis ("Willis"), non-party, as Director of Public Utilities. (Am. Compl. (DE 28) ¶¶ 2-5). On October 3, 2016, plaintiff began working as an administrative assistant in defendant Town's Public Works and Public Utilities departments, reporting directly to supervisors Willis and defendant Eakes. Id. Prior to working for defendant Town, plaintiff had worked in secretarial positions for ten years and had never been terminated or asked to resign in lieu of termination. Id.

---

[1] Defendants filed a prior motion to dismiss, which was the subject of briefing and text order entered October, 8, 2019. Defendants' instant motion supersedes in substance defendants' prior motion to dismiss.

Upon the start of her employment with defendant Town, defendant Eakes, plaintiff's direct supervisor, began acting "very flirtatious" towards plaintiff and making "suggestions of sexual attraction." (<u>Id.</u> ¶ 8). For example, one day during plaintiff's first week of work, plaintiff asked defendant Eakes "in a very professional tone" if there was anything else she could do for him. Defendant Eakes responded, "Yeah. You can scratch my back." <u>Id.</u>

Shortly thereafter, defendant Eakes's conduct towards plaintiff escalated and became "crude and more overtly sexual, as well as demeaning." (<u>Id.</u> ¶ 9). Instead of referring to plaintiff by name, defendant Eakes called her "sweet cheeks, Ms. Thang, darlin', sugar britches, sexy pants, woman, and baby." (<u>Id.</u> ¶ 9a). Additionally, in a text message sent to plaintiff, defendant Eakes stated, "Hello sexy pants just heading home and thought about [your] battery if it doesn't start in the morning just shoot me a text an ill [sic] come pick you up . . . just one stipulation you have to be waiting for me in your birthday suit." (<u>Id.</u> ¶ 9b).

In other text messages, sent October 21, 2016, defendant Eakes told plaintiff he could "talk a woman's panties off," asked plaintiff what kind of underwear she was wearing, asked to see her underwear, stated that a "peak" was "just going to excite" him, and asked plaintiff if she was "ready for him." (<u>Id.</u> ¶ 9c). Then, defendant Eakes sent plaintiff a text messages stating, "Frank just said I'm going to go in there and spank that [expletive]." <u>Id.</u> However, at that moment, Frank was in plaintiff's office, not defendant Eakes's office, so plaintiff attributed the remark to defendant Eakes. <u>Id.</u> The following dialogue ensued:

> Plaintiff: Hehe. You're mean.
> Defendant Eakes: He said he's going to show you mean.
> Plaintiff: Go Away
> Defendant Eakes: No, come here baby I got something for you.
> Plaintiff: No.

Id.  On October 25, 2016, defendant Eakes sent plaintiff a text message stating, "Let's turn off[f] lights and get in our birthday suits and run around the office and garage an[d] play hid[e] and go seek."  (Id. ¶ 9d).  Later that day, plaintiff told defendant Eakes she was leaving to get a salad for lunch.  Defendant Eakes texted plaintiff "did u say u had to go get a shower?"  After plaintiff responded in the negative, defendant Eakes texted "oh ok well in that case go ahead, I was going to say hold on ill [sic] go."  (Id. ¶ 9d).

On another occasion, defendant Eakes asked a male employee to stand next to him while he spoke to plaintiff so that plaintiff "wouldn't think he was sexually harassing her."  (Id. ¶ 9f).  Then defendant Eakes told plaintiff to stand still.  Defendant Eakes proceeded to stare at plaintiff "below the waist" and told her that her jeans were like "mirrors" and he "could see" himself "in [her] pants."  Id.  Additionally, in front of plaintiff and other employees, defendant Eakes "told one of his direct reports that he was going to 'go home and [expletive] the employee's sister,'" who was a minor at the time.  (Id. ¶ 9g).  Defendant Eakes also told plaintiff to come to his truck because he had "something in the back seat that [she] would really like," insinuating a sexual encounter, and during the first week of December 2016, defendant Eakes left "kiss prints" on the window of plaintiff's office.  (Id. ¶ 10).

Defendant Eakes's behavior "was not one-dimensional."  Id.  At times he was "charming" and "seductive," and at other times, he became "controlling" and "territorial," such as when other males approached plaintiff's desk.  Id.  For example, on December 6, 2016, male employees from plaintiff's former job stopped by her desk to inform her of a death in a former co-worker's family.  Upon seeing this interaction, defendant Eakes "communicated to [p]laintiff in a very sharp tone and accused [p]laintiff of being unethical by discussing another employer's for-profit business while [p]laintiff was on the clock for [defendant] Town."  Id.

Because defendant Eakes's behavior made plaintiff uncomfortable, she began closing her private office door whenever she was alone with defendant Eakes in the Public Works department office. (Id. ¶ 11). Moreover, defendant Eakes's alleged sexual harassment caused plaintiff "mental and emotional stress which manifested in physical illness." Id. Specifically, she experienced migraine headaches and panic attacks and was hospitalized in early November for gastrointestinal problems that were attributed to stress. Id. She also experienced a panic attack November 28, 2016, which caused gastrointestinal distress. Id.

On December 6, 2016, plaintiff complained to Town Manager Charles Burgess ("Burgess") about defendant Eakes's alleged sexual harassment, and Burgess met with defendant Eakes two days later. (Id. ¶¶ 13,15). When defendant Eakes returned from his meeting with Burgess, defendant Eakes "grabbed a thick catalog from his office and forcefully threw the catalog across a common area of the office." (Id. ¶ 15). Thereafter, defendant Eakes went into plaintiff's office and removed the cable television receiver. Id.

Following plaintiff's complaint to Burgess, defendant Town moved plaintiff to a different location, gave her additional job responsibilities and a de-facto supervisor, defendant Wood, while having plaintiff continue to report to directly to Willis and defendant Eakes. (Id. ¶ 16). Plaintiff alleges she was also asked to perform receptionist duties, on top of her regular job, even though the prior administrative assistant, who was a male, was not required to do so. (Id. ¶ 16a).

Prior to December 6, 2016, the day plaintiff complained about defendant Eakes's behavior, plaintiff had not been disciplined or criticized for her job performance. (Id. ¶ 17). However, on December 16, 2016, defendant Wood issued plaintiff written warning for a mistake she made regarding a purchase.[2] By issuing the written warning, defendant Wood allegedly failed to follow

_____

[2]    Plaintiff alleges she made a personal purchase on her Amazon account, using her personal credit card, via installment payment agreement with Amazon. (Id. ¶ 18a). Thereafter, defendant Eakes asked plaintiff to make

defendant Town's disciplinary policy, which provides that the first level of discipline is counseling by the employee's supervisor, the second level is a documented oral reprimand, and the third level is a written reprimand.  Id.  Plaintiff further alleges defendant Wood treated her differently than similarly situated employees regarding use of vacation time and sick time, dress code, and completion of time cards.  (Id. ¶ 20).

After plaintiff complained to Burgess about defendant Eakes, defendant Eakes became "very cold and he actively, as well as passive-aggressively, interfered with plaintiff's efforts to properly perform her job duties." (Id. ¶ 19).  Specifically, defendant Eakes "withheld information, withheld documents, and gave incorrect information and then blamed plaintiff when his inaccurate information produced inaccurate results." (Pl. Mem. (DE 58) at 4).[3]   Finally, defendant Wood terminated plaintiff from employment March 31, 2017, allegedly for pre-textual reasons.  (Am. Compl. (DE 28) ¶ 22).

## DISCUSSION

A.     Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

equipment purchases for defendant Town on her personal Amazon account so that defendant Town could utilize the free shipping offered through plaintiff's Amazon Prime account.  (Id. ¶ 18b).  Plaintiff made the requested purchases using defendant Town's credit card information.  Id.  On November 9, 2019, the second installment payment of $58.00 for plaintiff's personal purchase was automatically billed through her Amazon account.  (Id. ¶ 18c).  Plaintiff assumed this installment would be billed to her personal credit card; however, it was instead billed to the last credit card used, which belonged to defendant Town.  Id.  On December 13, 2016, Plaintiff was made aware of this mistake, so she contacted an Amazon representative to correct the issue.  (Id. ¶ 18d).  Plaintiff provided defendant Wood with a transcript of the conversation with the Amazon representative as proof that the mistake had been corrected.  Id.  However, defendant Wood still issued plaintiff the written warning, which accused plaintiff of "misuse of public funds" and required plaintiff to issue defendant Town an immediate cash reimbursement.  (Id. ¶ 18e).  Plaintiff made the cash payment, even though the Amazon Representative cancelled the transaction.  Plaintiff alleges defendant Town failed to reimburse her for the cash payment.  (Id. ¶¶ 18e-f).

[3]     Page numbers in citations to documents in the record specify the page number designated by the court's electronic case filing (ECF) system, and not the page number, if any, showing on the face of the underlying document.

Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments."  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc. , 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.      Analysis

        1.      Intentional Infliction of Emotional Distress

        Defendant Eakes argues plaintiff's IIED claim should be dismissed for failure to state a claim.  To plead IIED, plaintiff must show 1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional stress.  Waddle v. Sparks, 331 N.C. 73, 82 (1992) (internal quotations omitted).  Conduct satisfying the first element "exceeds all bounds of decency tolerated by society, and is regarded as atrocious and utterly intolerable in a civilized community."  Turner v. Thomas, 369 N.C. 419, 446 (2016) (internal quotations omitted). Such conduct "may be found in an abuse by the actor of a position . . . which gives him . . . power to affect the interests of another."  Id.  (internal quotations omitted).  However, North Carolina courts have "set a high threshold to satisfy this element."  Id.  (internal quotations omitted).

        The second element may be satisfied "where defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress."  Dickens v. Puryear, 302 N.C. 437, 452 (1981).  Under the third element, "'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression,

phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304 (1990).

Taking the facts alleged in amended complaint as true, plaintiff has stated a claim for IIED. Defendant Eakes, plaintiff's direct supervisor, allegedly made repeated offensive and sexually charged comments to plaintiff, including: 1) offering to help plaintiff with her car battery before work only if plaintiff was in her "birthday suit" when he arrived; 2) staring at plaintiff "below the waist" and stating her pants were like "mirrors" because he could see himself in them, in front of a male co-worker he specifically summoned to hear his remark; 3) asking for a "peak" of plaintiff's underwear, stating that it would "excite him," and asking if plaintiff was "ready for him;" 4) suggesting that plaintiff run around the office in her "birthday suit" with defendant Eakes; 5) sending a text message to plaintiff stating a fellow male employee was going to go in her office and "spank that [expletive];" and 6) throwing a catalogue across the room and removing the cable receiver from plaintiff's office after plaintiff reported his alleged sexual harassment. (See Am Compl. (DE 28) ¶¶ 9(a)-(g), 15).

This sexually charged conduct, in light of defendant Eakes's position of power, is extreme and outrageous. See e.g., Turner, 369 N.C. at 419 (stating extreme and outrageous conduct "may be found in an abuse by the actor of a position . . . which gives him . . . power to affect the interests of another."); Guthrie v. Conroy, 152 N.C. App. 15, 23 (2002) (collecting cases) ("[C]laims of IIED based upon sexual harassment generally have included one or more of the following: an unfair power relationship between defendant plaintiff; explicitly obscene or "X rated" language; sexual advances towards plaintiff; statements expressing desire to engage in sexual relations with

plaintiff, or, defendant either touching plaintiff's private areas or touching any part of the plaintiff's body with his private parts.").

Defendant Eakes argues his conduct does not rise to the requisite level of extreme and outrageous because "[IIED] claims do not provide a remedy for 'rough language or for occasional acts that are definitely inconsiderate or unkind.'" (Def. Mem. (DE 30) at 7) (citing Hogan v. Forsyth County Club Co., 79 N.C. App. 483, 493-94 (1986)).  Defendant's argument is unpersuasive.  In Hogan, the court granted defendant's motion for summary judgment on plaintiff's IIED claim where plaintiff alleged defendant "screamed and shouted at her, called her names, interfered with her supervision of waitresses under her charge, and on one occasion, threw menus at her." 79 N.C. App. at 492.  Hogan is distinguishable from the instant action because the Hogan defendant did not make sexually explicit remarks to plaintiff and was not plaintiff's direct supervisor.  See id.

Defendant Eakes also relies on Guthrie for support.  In that case, the plaintiff alleged defendant:

> (1) held plaintiff from behind, and touched or rubbed her neck and shoulders;  (2) "irritated" her by placing a lampshade on her head when she fell asleep with her head on her desk;  (3) threw potting soil and water on plaintiff while she was planting flowers at work, remarking when he threw a cup of water on plaintiff that he'd "always wanted to see [her] in a wet T shirt";  and (4) placed a Styrofoam "peanut" and other small objects between the legs of a "naked man" statuette that plaintiff displayed on her windowsill at work and asked her "how she liked it" with the addition.

152 N.C. App. at 24.

Dismissing plaintiff's IIED claim, the court found the above allegations were not extreme and outrageous because defendant "was not plaintiff's supervisor or workplace superior; he did not swear or employ obscene language;  he referred to nothing more vulgar than a "wet T shirt";  and although he gave plaintiff a "shoulder rub" against her wishes, he never expressed any interest

in sexual activity with plaintiff." Id. These deficiencies, which warranted dismissal of the Guthrie plaintiff's claim, are not present here. In contrast, in the instant action, defendant Eakes was plaintiff's workplace supervisor and superior, he allegedly swore and employed obscene language, and he allegedly expressed an interest in having sexual activity with plaintiff on multiple occasions. Therefore, the instant action is distinguishable from Guthrie.

Finally, although defendant Eakes does not address the final two elements of an IIED claim, plaintiff's allegations suggest defendant Eakes at least exhibited "a reckless indifference to the likelihood that [he would] cause severe emotional distress." Dickens, 302 N.C. at 452. Moreover, regarding the third element, plaintiff has established that defendant Eakes's conduct caused her severe emotional distress in the form of migraine headaches, panic attacks, and gastrointestinal problems requiring hospitalization. Accordingly, defendant Eakes's partial motion to dismiss plaintiff's IIED claim must be denied.

2. Plaintiff's official capacity claims under the North Carolina Constitution

Defendants move to dismiss plaintiff's claims under North Carolina Constitution, Article 1, Sections 1, 19, and 35. Plaintiff asserts defendants Eakes and Wood caused plaintiff constitutional injury by "conditioning her employment upon her willingness to acquiesce to [ ] sexual harassment," "interfering with plaintiff's abilities to perform her job duties," "creating pre-textual reasons by which plaintiff's job performance would be negatively evaluated," and "creating pre-textual reasons to terminate plaintiff's employment." (See Am. Compl. (DE 28) ¶¶ 28-36). Article 1, Section 1 of the North Carolina Constitution states in pertinent part, "[A]ll persons . . . are endowed . . . with certain inalienable rights; that among these are . . . the enjoyment of the fruits of their own labor." N.C. Const. art. 1, § 1. Additionally, as relevant here, Article 1, Section 19 of the North Carolina Constitution states, "No person shall be denied the equal protection of

the laws." Id. art. 1, § 19. Finally, Article 1, Section 35 of the North Carolina Constitution states, "A frequent recurrence to fundamental principles is absolutely necessary to preserve the blessings of liberty." Id. art. 1, § 35.

The North Carolina Supreme Court has held that Article I of the North Carolina Constitution provides a direct cause of action to enforce the rights contained therein where there is an "absence of an adequate state remedy." Corum v. Univ. of N.C., 330 N.C. 761, 782 (1992). However, the court "must bow to established claims and remedies where these provide an alternative to the extraordinary exercise of its inherent constitutional power." Id. at 784. Furthermore, "in exercising that power, the judiciary must minimize the encroachment upon other branches of government—in appearance and in fact—by seeking the least intrusive remedy available and necessary to the right the wrong." Id.

An adequate state law remedy exists where there is a cause of action, at common law or created by statute, that provides plaintiff with "the possibility of relief" for the same injury alleged in the direct constitutional claim. Craig ex rel. Craig v. New Hanover Cty. Bd. of Educ., 363 N.C. 334, 340 (2009). This means "a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." Id. at 339-40. Accordingly, where "sovereign immunity precludes such opportunity," a plaintiff lacks "an adequate remedy at state law" and "may move forward in the alternative, bringing his colorable claims directly under [the North Carolina] Constitution." Id. at 340.

Defendants argue plaintiff's state constitutional claim should be dismissed because claims for IIED and tortious interference with contract provide plaintiff with adequate state remedies.[4]

---

[4]     Defendants also argue that plaintiff's claim against defendant Town for wrongful termination in violation of North Carolina public policy provides plaintiff with an adequate state remedy. However, at this juncture, it is unclear whether defendant Town has waived governmental immunity, and pursuant to Craig, such immunity affects the adequacy of the claim as a state remedy. Therefore, on this undeveloped record, the court declines to determine

The court agrees. Plaintiff's IIED claim against defendant Eakes in his official capacity provides plaintiff with the "possibility of relief" for the injury alleged in her constitutional claim. <u>Craig</u>, 363 N.C. at 340. This is true even though plaintiff's IIED claim is alleged against defendant Eakes while her constitutional claims are alleged against defendants Eakes <u>and</u> Wood. <u>See</u> <u>Taylor v. Wake Cty.</u>, 811 S.E. 2d 648, 656 (N.C. App. 2018) ("While the law generally allows plaintiffs to select the defendants from whom they wish to obtain relief, such is not the case when doing so requires the extraordinary exercise of the judiciary's constitutional power necessary to permit a <u>Corum</u> claim.").

Moreover, plaintiff's IIED claim is an adequate state remedy even though plaintiff asserts against defendant Eakes in his individual capacity, while plaintiff asserts her state constitutional claim against defendants in their official capacities. <u>See e.g.</u>, <u>Wilcox v. City of Asheville</u>, 222 N.C. App. 285, 301-02 (2012) (holding that a claim against defendant in his official capacity is sufficient to preclude plaintiff from asserting a <u>Corum</u> claim against the defendant in his official capacity); <u>Rousselo v. Starling</u>, 128 N.C. App. 439, 495 (1998) (holding that a common law claim against defendant in his individual capacity was an adequate state law remedy so plaintiff was not entitled to bring claims under the North Carolina Constitution).

Plaintiff argues her IIED claim is not an adequate state remedy because it addresses a different injury than her state constitutional claim. However, in amended complaint, plaintiff claims defendants Eakes and Wood's alleged violation of her constitutional rights "proximately caused [p]laintiff substantial damages including but not limited to damages to her career, <u>emotional distress</u>, <u>humiliation</u> and <u>embarrassment</u>." (Am. Compl. (DE 28) ¶ 35) (emphasis added). If plaintiff prevails on her IIED claim, she will be compensated for those damages.

---

whether plaintiff's wrongful termination claim is an adequate state remedy.

Moreover, as explained below, a tortious interference with contract claim would provide plaintiff with an adequate state remedy for the job loss portion of her alleged constitutional injury.

Under North Carolina law, the elements of tortious interference with contract include:

> First, that a valid contract existed between the plaintiff and a third person, conferring upon the plaintiff some contractual right against the third person. Second, that the outsider had knowledge of the plaintiff's contract with the third person. Third, that the outsider intentionally induced the third person not to perform his contract with the plaintiff. Fourth, that in so doing the outsider acted without justification. Fifth, that the outsider's act caused plaintiff actual damages.

Childress v. Abeles, 240 N.C. 667, 674 (1954) (citations omitted).

A "non-outsider" to the operative contract, such as an employment supervisor, can be held liable under this cause of action if the non-outsider acts in bad faith. See e.g., Smith v. Ford Motor Co., 289 N.C. 71, 87 (1976) (We perceive no reason for conferring upon the non-outsider immunity to suit for the malicious procurement of the termination of a contract . . . defendant's status as an outsider or a non-outsider is pertinent only to the question of justification for his action"); Lenzer v. Flaherty, 106 N.C. App. 496, 513 (1992) (categorizing an employment supervisor a "non-outsider" and stating "[t]he qualified privilege of a non-outsider is lost if exercised for motives other than reasonable, good faith attempts to protect the non-outsider's interest in the contract interfered with").

Applying the elements as stated above, plaintiff had an employment contract with defendant Town,[5] defendants Eakes and Wood were aware of the contract, defendants Eakes and Wood allegedly induced defendant Town to terminate its contract with plaintiff by "interfer[ing] with [p]laintiff's ability to meet her employer's performance expectations" and "creating pre-

---

[5] Although plaintiff does not provide the details of her employment contract, this cause of action applies even if plaintiff's employment contract was terminable at will. See Smith, 289 N.C. at 84.

textual reasons to terminate [p]laintiff's employment," defendants Eakes and Wood were without justification, as plaintiff alleges they were retaliating against her for reporting sexual harassment, and finally, defendants Eakes and Wood's actions caused plaintiff damages, as she was terminated from employment. Since a tortious interference with contract claim would address the same injury as plaintiff's constitutional claim, plaintiff has an adequate state remedy, which the court must "bow to" instead of exercising its "extraordinary" constitutional power. Corum, 330 N.C. at 784.

However, plaintiff argues a tortious interference with contract claim is not an adequate state remedy because it would not allow her to seek reinstatement of her employment position or recover the full extent of her damages. Plaintiff's argument is unpersuasive as the adequacy of a state law remedy does not turn on the type of recovery, or amount of recovery, a plaintiff receives. See e.g., Corum, 330 N.C. at 784 ("[T]he judiciary must minimize the encroachment upon other branches of government—in appearance and in fact—by seeking the least intrusive remedy available and necessary to the right the wrong."); Taylor, 811 S.E. at 656 (holding the limited scope of damages and type of damages available to plaintiff in the Industrial Commission, as compared to the damages available in superior court, does not render plaintiff's claim in the Industrial Commission "an inadequate state remedy").

Finally, plaintiff argues that a tortious interference of contract claim is not an adequate state remedy because, in Lenzer, the North Carolina Court of Appeals reversed the trial court's dismissal of plaintiff's state constitutional claim and tortious interference of contract claim. However, plaintiff's argument is unpersuasive where the adequacy of a tortious interference with contract claim as a state remedy was not before the court in that case. See Lenzer, 106 N.C. App. at 512-15. Instead, the appellate court was solely considering whether the lower court erred in dismissing plaintiff's state constitutional claims on sovereign immunity grounds. Id. The appellate

court reversed the trial court, but did not address whether plaintiff had an adequate state law remedy, as that issue was not properly raised before the court.  Id.

In sum, where claims for IIED and tortious interference of contract would provide plaintiff with adequate state remedies for her alleged constitutional injury, the court dismisses plaintiff's official capacity claims against defendants Eakes and Wood under the North Carolina Constitution.[6]

3.     Punitive Damages

Defendants move to dismiss all claims for punitive damages raised against defendant Town and against defendants Eakes or Wood in their official capacities.  Municipalities are not subject to punitive damages in claims brought pursuant to Title VII.  See 42 U.S.C. § 1981(a)(b)(1) ("A complaining party may recover punitive damages . . . against a respondent (other than a government, government agency or political subdivision") (emphasis added).  In addition, "in the absence of statutory provisions to the contrary, municipal corporations are immune from punitive damages" under North Carolina law.  Long v. City of Charlotte, 306 N.C. 187, 208 (1982).  Accordingly, municipal officials are not liable for punitive damages in their official capacities under either Title VII or North Carolina law.  Cf. Iglesias v. Wolford, 539 F. Supp. 2d 831, 841 (E.D.N.C. Mar. 7, 2008) (holding that since a claim against a municipal official in his official capacity is essentially a claim against the municipality, and since the municipality is immune from punitive damages under 42 U.S.C. § 1983 and North Carolina law, then the municipal official in his official capacity must also be immune for punitive damages under 42 U.S.C. § 1983 and North Carolina law ) (citing Kentucky v. Graham, 473 U.S. 159, 165–66 (1985).

---

[6]     Because the court grants defendants' motion to dismiss on plaintiff's state constitutional claim on the basis of adequate state remedies, the court does not reach additional grounds for dismissal asserted by defendants.

On the face of plaintiff's amended complaint, plaintiff appears to raise claims for punitive damages only against defendant Eakes in his individual capacity. (See Am. Compl. (DE 25) ¶¶ 63, 68). Indeed, in response to defendants' motion, plaintiff asserts she is only seeking punitive damages "as by law allowed" and "only asserts grounds for punitive damages against [d]efendant Eakes in his individual capacity." (See Pl. Mem. (DE 58) at 28). However, to the extent plaintiff's complaint can be construed as raising claims for punitive damages against defendants Eakes or Wood in their official capacities, or against defendant Town, those claims are dismissed.

## CONCLUSION

Based on the foregoing, the court DENIES defendant Eakes's partial motion to dismiss (DE 29) and GRANTS defendants Eakes, Wood, and Town's partial motion to dismiss (DE 56). The following claims are dismissed with prejudice: plaintiff's official capacity claims against defendant Eakes and Wood under North Carolina Constitution Article 1, Section 1, 19, and 35 and plaintiff's claims for punitive damages against defendant Eakes and Wood in their official capacities and against defendant Town. All other claims remain.

SO ORDERED, this the 6th day of December, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge

16